Aatrix Software v. Greenshades Software Yes, sir. Mr. Lunseth, please proceed. Yes, ma'am. May it please the Court. There are quite a few issues in the brief, and there are two major sets of issues. One is the district court's misconstruction of Claim 1 of the 615 patent, an issue that was never raised by any party. It was done sua sponte. I intend to leave that for the briefs unless the panel has questions. Is this this tangibility point, is that what you're just referring to? The tangible embodiment issue, yes. If you have questions, I'll be glad to answer the questions, but I don't think there's enough time. I want to go directly to the Alice abstract idea issue and discuss that. And the relief that we would like here, this case had been pending for two and a half years, and we're still at the 12B6 stage. We would like to have the court reverse the Alice decision and send it back in such a way that there's no more rebuilding of the record down at the district court, so we come back up here in another year or something like that again on a 12B6. As far as the Alice issue is concerned, I think this case puts this issue squarely. Can a district court generate an abstract idea at a high level of generality? And then if it finds that the patent is an example of it or involves that abstract idea, can it hold it? The patent is patent ineligible without regard to the claim language, which is directed to specific improvements to technology. You have not, as I understand it, you have not made any arguments for claims other than Claim 1 that you might win on for, let's say, Claim 22 or something, even if you lose on Claim 1. You've treated it all as everything here, we can treat Claim 1 as representative. It was easiest to do that in the briefs and for purposes of this discussion. So if we look at Claim 1 and read it in light of your own specifications, description of the evolution of Atrix products and description of what was available not just with Atrix but in scanners and OCRs and whatnot, what is it that, as reflected in Claim 1, is the asserted advance over what went before? Well, the Atrix claims are for a system, and it's an ordered combination. And actually there are a lot of asserted advances, but what I want to do here is go to one or two of them and discuss those so you can understand what they are. And the first one I'm going to go to is the data file element. It's a data file, and it's comprised of structured, predefined data from a user application. That user application alone says that this is not a patent that reads on the whole world of filling out forms. It's for add-on software. In other words, there needs to be a host application, typically a business accounting software, where the data is created, and then the task is how to get the data from that host application into the form software in order to fill out a form. And the date of invention was November 28, 1995, and at that point in time there were two prior art models. One was the monolithic code, which we described in the brief, and that was very common back in the early 90s where business accounting software would be written in a monoblock of code, one set of serial code from beginning to end, and the forms were actually written into that code. And in order to move the data into the form from wherever it was calculated in that monolithic software model, there would be a code command, go get the value at line 1, 2, 3, and put it in this blanket form. The other model was the e-forms model, and the e-forms model allowed the creation of a form. It wasn't a very good looking form as far as we're concerned, but the form had data fields similar to what's in the Atrix patent, but the only method of moving data from the host application into that form that was disclosed was by writing commands in that data field, something like db fetch, go to this database and fetch with parameters to execute a database command. And each of the data, if there were 10 boxes in the form, each of the boxes had to be coded with a database command to go fetch from a database. The problem was when Atrix attempted to go to market with its product, that the vendors who create the software, the host application, were jealous of their data structures. And by data structures, I mean how they keep the data, where it's kept, and also the syntax. And the reason for this was that if they disclosed their data structures and a competitor got a hold of it, the competitor could readily convert that data to a new application, and then they couldn't get the customer back. The data would not be in a proprietary format. So to get this product to market, to make it actually work, they had to devise a system where the writer of the host application did not have to give up that syntax. The host application is what? The business accounting software. Whatever the source is of the data, you're going to fill a form out, you're going to put data in it. We create the form for you, we need your data. That's the problem. So they created the data file element, and the data file element is disclosed in the specification. And I'll read you a couple of pieces. First of all, it's predefined structured data. Where is that? Column 11, appendix 67, and it starts at line 1. AUF file, by the way, is there like a PDF file. The AUF contains records of tab-delimited fields terminated by a carriage return. The first field holds a tag that defines the record and indicates what fields will follow. Then there's an example. Then it says the numbering and ordering of the fields is critical. In other words, this is structured data. It's, I'm going to give you a tray, and my tray has 10 slots in it, and total wages, tips, and salaries goes in the fifth slot. Time out for a second. I understand that this example is present, but at column 12, line 21, the same specification says by examining the data requirements for a form, the vendor application can determine what data it should apply in the AUF  With all due respect, it doesn't sound like your system is the one obtaining the data. It sounds to me, following this example, like it's the vendor application, i.e., the third-party software that's going to determine based on your specification whether to supply data and what data to supply. That's exactly my point, Your Honor. The problem was that if Atrix went to a vendor and said, We want to take data out of your host application. How do we do it? The vendor would say, No, I'm not going to tell you that. It's proprietary to me. So they had to come up with a solution where the host application, the writer of the host application, or the owner of the host application, could pack the data in a file and send it to them without ever disclosing the syntax, the cert syntax. So you're exactly right, and that was the next section I wanted to read there because what this section that you referred to describes is the form software publishes a description of the format of the data file. For this particular form, we need this data in this exact order. You pack it up and you send it to us, and now the owner of the host application or the writer of the host application does that rather than the vendor of the form software, and that was acceptable in the market. It was not acceptable to do it the other way around where the vendor application had to disclose its data structures to the applicant. Counselor, are you saying that the claims are directed to her, or are you claiming these methods here? For example, are you claiming the vendor applications or these other programs that you're talking about? I mean, when I look at the claim that you referred us to, all it's talking about is a file, a data file. Yeah, it is for a data file, yes, and then there's disclosure of how that data file is made, no. But in the claim, show me in the claim where it says that. Let me emphasize that this is a 12B6 proceeding, Your Honor, and there's been no claim construction. We have not presented any evidence or anything to any court. But we've said that in ALICE Step 1, we determine whether the claims are directed to a subject matter that's ineligible for panning. Yes. Okay. So what is claimed in Claim 1 of the 615, of course, you're right, is a data file. But that is a carrier, if you will, that is capable of, it contains predefined structured data, and if you publish the structure as disclosed in the specification, then the owner of the vendor application can send you the data. Can, but doesn't have to, right? You're still relying on compliance by the third-party vendors. Yeah, that's entirely true. But this is a claiming issue, Your Honor. Do it the other way around. Suppose that – I'm trying to figure out what's inventive about it because, yes, you're asking them, you pack it up and send to us whatever you want. This is what we would like, but we don't have to give you what you like. I mean, my kids want pizza for dinner, but I give them green beans and chicken. You know, I mean, you don't get everything you want. So the vendor might say, no, no thank you, not willing to comply, and then you get nothing. I mean, I'm trying to figure out what's inventive about this. Well, it worked. That's one thing. The company has 55 employees, 14 million in revenues. Yeah, but as claimed. I'm trying to figure out whether this is an abstract idea, and as or whether there's an inventive concept. And as claimed, it's just a data file. And all that you're saying is inventive is that instead of us trying to take the data from them, we ask them to give us the data. Yes. Now, wait a minute. That was completely nonconventional in 1995 for add-on software. All the other prior art models did it the other way around. And when I say it's a claiming issue, what you're saying is, should you not have written in the claim, a claim that you published the template for the data file structure. But that makes it too easy to design around the application, because if there's something in the spec, since we are on 12B6 and you were not allowed to amend the complaint a third time, I'm not sure, a second time, whatever, is there something in the spec that tells me that's new? Because, you know, I'm not an ordinarily skilled artisan, so you telling me this is new and inventive is just attorney argument. No matter how skilled you may be, it's just attorney argument. So is there something somewhere that would tell the district court or create a fact question, for example, about whether this is inventive? Is there something here that could have prevented 12B6? Our proposed amended complaint, paragraphs 43, 44, and 45 say that. I know, but it wasn't allowed. And so your proposed amended complaint wasn't allowed. So you had multiple shots at the complaint. You decided to go Twombly at first. That didn't end up working so well for you. Pre-Twombly, Form 18, that didn't work so well for you in terms of combating a 12B motion. And then you had another shot, and you didn't put in enough specifics. I know. I think your second amended complaint would have created questions of fact, and you probably would have allowed me to reverse this and told the district court, oh, no, no. They've at least alleged, taken if true, questions of fact. But none of those are in the complaint that was allowed. Well, let me make clear that the first amended complaint was not a complaint that was allowed. The first amended complaint, we filed a complaint. And then before we served the complaint, we amended the complaint. The second amended complaint is the first of the amended complaints on which the court made a ruling. It was our first chance. And we made those allegations in that amended complaint. But they didn't allow them. So unless you can win on the second amended complaint, I don't see how the record allows me to conclude that there was a fact question on this data file point. Because, you know, whether I take something from you or whether I say, can I please have it? I mean, it doesn't seem to me as something that is clearly and unequivocally inventive. And let me address it. My time is running short. Well, I'm in charge of your time, so don't interrupt me. Okay, I'm sorry. But, you know, you don't need to worry about that. So that's where I'm struggling. All right. What you're asking is, why did you not write into the specification in 2002 that this is an advantage and here's how the advantage occurs? No, no. I'm sorry. No, that's not what I'm asking you. I'm saying, is there any evidence in this record that a question of fact is created about whether or not there's an inventive aspect? It can't just be attorney's argument, even at 12B. You have to allege stuff. The answer is there's no record. It was a Form 18 complaint. We asked the court to take evidence, make a record, allow in the prosecution histories. Well, counsel, at the end of the day, you did have a patent in the record.  You do have the intrinsic evidence that comes with the patent. When you amended your complaint, you did amend the claims. So even had the amendment been granted, you're still stuck with the claims. Yes. I agree with you. All we added in the amended complaint on this specific issue is the allegation that the inventor discovered that if he had to get the data structures from the owner of the host application, most of them would say no, and he had to come up with a different element. So he did, the data file. That's alleged in the second amended complaint. What in the specification tells us that the claim term, the data file, has what you keep referring to as structure? Okay. That's what one skilled in the art would consider a data file to be, and it is described in that portion of the specification that I read to you, Your Honor. Column 11, line 9, the number and ordering of fields is critical. The fields are empty. All tabs must still be present within a record. In other words, it's a structure. That's what is disclosed. And it says contains tab-delimited fields. This is a classic structured data file. No question about it. Mr. Lunseth, we've used up all your rebuttal time. I'll restore some, but let's move on to Mr. Bain, please. Thank you. Thank you, Your Honor. The district court properly gained an understanding of the invention, strictly looking at the intrinsic record that was presented, which is the patent. Under Phillips and under all the law, it's proper for a court to assess what the invention is based on the patent, just like the public ordering the patent should be able to read the patent and get an understanding of the invention. Well, I'll just say it. I don't think the district court got this right. That whole tangibility thing doesn't make any sense to me at all. So I don't think that's right. Then the question is, can I affirm the rejection of Claim 1 under Alice? And, you know, so I don't have as much confidence having read the opinion as you seem to. Okay. So why don't you actually focus on the merits? Well, I'm focusing on the, with respect to the intangibility component, the court did note three things. Number one, that he felt that reading the claims, which is where we must start. Okay. Maybe you misunderstood. I think the opinion on the tangibility point makes no sense. I don't think that you should waste any of your time at all trying to defend the district court opinion on that point. I agree with Judge DeBoer, and I think the court got it wrong on that particular argument. The question is whether the result was ultimately correct or not. I do think the result was ultimately correct. Yes, I can. I don't think that there is an inventive concept present in the claims. If you read the claims, they describe different activities, which are actually admitted to be part of the prior art from the background section of the invention. The idea of using a form generator to create a form file, the idea of using a viewer that can have multiple layers where you have the image and then you superimpose upon that fields where you can have editable data, that's all described in the background of the invention. And if you critically read the dates that are admitted in the background of the invention, you'll see that it's describing technology that was developed years before the effective filing date of this case. So if we take that technology that's described in the background of the invention as known conventional computer technology related to creating a replication of a file and superimposing the data upon it to create these forms, then we ask ourselves, those aspects of the claim are already in the prior art. What new is in the claim? And when you remove those functions, all that's left is the generic recitation of files and programs. There's no structural detail, there's no functional detail to how those are operating. How do we know? I mean, the data file, don't we need some claim construction here to know what the data file is? It doesn't seem to be a generic data file. It does seem to have some structure articulated at column 11. So how do we know that these are just generic components, as you say, as opposed to specific components defined by the patent? Well, column 11 is not the claim. Column 11 is directed to preferred embodiments, which should not be imported into the claim. We have to construe the term data file. You want me to say it's a generic term. I have to look at how it's used in this patent to make that determination. Well, I will show you another section of the specification that expands the scope, but I think the first thing we would do if we were to undertake a claim construction is to say that a data file is going to be given this plain and ordinary meaning, and a file containing data is a reasonable construction of that. To import all the details of all this preferred embodiment from column 11, it would be an improper importation. Let me point out to you also, Your Honor, column 4. Just to be clear, the district court here did not do a claim construction, didn't have a claim construction set of briefs? That is correct. With respect to the data file, he did not actually specifically construe it. So what you were just saying is your argument about claim construction, an issue that was not, in fact, addressed below. Right, and the reason I'm saying that is it's unnecessary. Courts are not obligated to do claim construction on every term. That's right, but let's talk about the specifics. You said something about I will get back to columns 11 and 12, but there's something else in the spec that says we mean something very, very broad. That's correct. What is that? That is column 4, Your Honor, appendix 63, beginning at line 57, which is where the first concept of the data file embodiment is discussed, and that's the creation of the AUF file. This is the part that fields in the area of the form that needed to be filled in with either automatically taken from another program, such as a payroll application, which was the embodiment that was being discussed before, or significantly manually filled in by the user. So the data file can be created by simply the manual entry by the user as well as the importation from a third-party application. I'm sorry. Is that talking about just the data fields in the form that's going to be filled in, not the data file from which one can fill in the data fields? I know that there are a lot of common letters in the word files. This section is discussing the creation of the AUF file, which I believe was previously defined as basically the embodiment of the data file. I think that's in the background of the invention, which once again raises the question of it being part of the prior art. In the background of the invention, no, I'm sorry, basically in the overview at the beginning of the description of the preferred embodiment, in column three, it describes the second component. This is beginning at line 14, column three. It ties data file to AUF by the following. The second main component is the data file 20. Through this file, data from a vendor application is seamlessly imported into the application and is used to populate the form fields. This file is known as the AUF. It contains only data for selected reporting periods, et cetera. Okay, so the bottom of column four says you're going to have this data file and into the fields in the data file you can get information a variety of ways, including typing it in. Correct. So my view is that that doesn't restrict, that doesn't eliminate the suggestion that there is a structure in this data file, right? All that is said is you can get information into slots in the structure in a variety of ways. It doesn't preclude the possibility that there's structure in the data file, but the term data file as used in the claim and then as broadly recited in the specification, notwithstanding any of the details that might have been presented in a preferred embodiment, is broadly just a memory holding file. So you just referred to data files as broadly recited in the specification, put aside the preferred embodiment. What does the first half of that refer to? What are you referring to when you say data file as broadly recited in the specification? The introductory discussion of it in column three, beginning at line 14, where the concept of a data file is first presented in the disclosure and then is correlated with the AUF. I'm confused, though. Through this data file, data from the vendor application is seamlessly imported into the program and used to populate the form fields. I guess I don't understand how that isn't a file with structure. I guess maybe I'm not following what you want me to follow. I mean, it is a file of data which is going to be used in the system. What am I missing that you want me to know about this? Or how do you disagree with that? I'm confused. Well, generally information data that's being stored somewhere in another cell. This isn't just data. This is a data file which contains fields, right? I mean, that's clear both from column three and the bottom of column four. They both talk about the fields. It's a data file which contains fields. And all of the use throughout the patent of the fields is what? Well, the fields are basically an intangible thing that is defined by programming as being presented on an image. So the user sees that field virtually on the image as he's filling it in. So ultimately a data file could only be structured if we're going to imply that it's stored in memory somewhere. But the data itself is not structure. But if we want to construe the data file as having structure, it's still not going to take away from the fact that it doesn't survive Alice. But you better move on to that because you don't have me on the it doesn't have structure part. So to go on to why even if it has structure you still win. First of all, the lack of structure issue is only related to claim one by the court. But we think that any difference that we may have in the correctness of that analysis is remedied by the fact that the proper Alice analysis of the same four elements, A through D, is undertaken with respect to claim two. And if the court agrees that there is no inventive concept added by these four elements, A through D, as thoroughly analyzed by the court in claim two, claim two has those elements A through D by virtue of depending from claim one. So claim one would suffer from the same lack of inventive concept. So just to ask the question a different way, why is the court right about claim two? And now assume that the data file has a structure. Now defend the Alice conclusion about claim two. Okay, well, we believe that the court mentions three things on the intangible, which the court does not agree with. But the intangible, everything that's being described functionally in claim one slash claim two in the elements A through D, are things that a human could perform without the use of a computer. And then the only thing that's added to that is the notion of programs and files. Nothing other than conventional computerization of steps that a human could perform. A human could replicate a tax form by hand. There was a comment by the matrix that this was something they wouldn't do. But the reason they wouldn't do it is not because they're not technologically capable of doing it. It's that they would be impractical and inefficient, which is one of the many reasons we use computers to do things more efficiently. And the storage of data is described in the prior case law as being the collection, which one of the things that the judge noted, the collection of data and the storage of it is a known conventional act. So each of the individual four acts are in the admitted prior art of the background and the invention. They represent conventional steps. We have cases like DDR and EnFish that have said that improvements in computer technology or operation of the computer could be the kind of inventive concept that entitles a patent to survive Alice, a software patent. And we've got a lot of allegations by them. Ease of the form file creation. The crux of their argument, it seems to me, is that the form file creation program enables non-software programmers to make form files. Then you go over to the data file issue. The data file issue, according to them, allows for data fill to occur without needing to get into the proprietary aspects of a vendor application, which they don't like. Each of these things may or may not be true, but don't they create fact questions which at least survive 12B6, possibly not summary judgment, but at least 12B6? Initially, I would think so, Judge, if all we're looking at is the four corners of the patent. But this patent presents a very interesting situation. The things you've just described with respect to a form file creation program that results in a form file, they've actually effectively admitted that that's already part of the prior art because that's described in the background section of the invention. The viewer element, D, is described in the background section of the invention. If we accept, and again, if we look at the dates, 1995, as being the publication of forms generated by these programs and the publication of standards in 1995, these are all dates seven years before the filing date. So if within the four corners we have evidence that what's being told here as background is actually prior art, then none of this, to the extent that it reads on the plane... Let's go through each one because I don't... You're making general allegations. Where is the form file creation program? Where is that described as in the prior art? Column 1, beginning at line 22, describes that another version of the software, programming tool that generated C... Column 1, line 22? Another version of the software, okay. Produced in 1993, nine years before the filing of the application, was a programming tool that generated C and PASCAL source code for use within the company's payroll series of products. The product consisted of a graphical user interface for tracing text entry boxes over an existing graphic, then exporting that source code required to produce those text boxes. Okay? If you read that against the very generic recitation of a form file generation in claim 1, it reads on it. So that can't be the source of innovation. Further, Your Honor, they describe that, again, part of the prior art... I'm not sure I follow you because when we're conducting a test under Alice, we're not making an obvious misinquiry. Yes, I agree. And it seems like that's what you're saying. It's a very... I mean, you're identifying prior art, but that doesn't help here. I think the question that you may be trying to address is whether the invention used well-known conventional technology at the time. That is correct, and it's our position that the background... But what you're showing us doesn't say that the invention utilized well-known technology or conventional technology. Greenshades takes a position that what's described here would be considered conventional. If the court feels that that's a question of fact, that may be your conclusion. The Pascal code was conventional, but that's not what we're looking at. We're looking at whether the invention is conventional, utilizes conventional technology. And what the invention is saying is that we created something beyond what existed in 93. And that's what I'm trying to demonstrate is that as claimed in Claim 1 and Slash 2, they did not create something... What they created new over 1993, I haven't been able to identify yet, frankly, Your Honor, because the idea of a form generation code... One of the advantages of their new invention was the ability to get away from programmers. But again, you're arguing obviousness or even anticipation, and that's not what we're looking at in this situation. I understand. I'm just... I'm referring to it as a prior art, but it's our position that this would be considered conventional. The things that are described in this background section are conventional. And if they are conventional and they're included in the element, then that would not be a technological advancement that passes Alice, because Alice requires more than a conventional use of computer technology. If you look at Column 1, whether in the material that you were just reading from, the 1993 version or elsewhere... Yes. Does something in there describe the importation of data into the form? The 1993 paragraph talks about having text entry boxes overlaid on an existing graphic. But does it talk about the importation of data to fill in those text entry boxes? And does the answer to my question matter? I don't know that it does, but this would not be the only source of determining whether the importation of data into a data file or into a data box is considered to be a conventional... Because there's something else in the spec? I don't think there is in the specification that speaks to that. Or speaks to it being a new... To the question that was asked of Atrix's counsel earlier, I don't think the converse is true either. I don't think any of the specification describes that as being a new thing. And we do know from case law that the idea of, for example, in the contact extraction case, the idea of pulling data from something and putting it into storage is a known computer technique. It's been found to be that as a matter of law. And from a computer operation standpoint, the idea of importing this into a data file would seem to be the same thing. And so under contact extraction as a matter of law, that particular functionality should be regarded as conventional and therefore not providing the inventive concept. Okay, well, I think your time is way past up. Let's restore Mr. Lunseth's rebuttal time, please. Thank you, Your Honor. And if you need to, you can go a little beyond the two minutes because we went over with them. Judge Serrano, I'd like to address your question about importing text. What that is talking about is when a replica form is created of a governmental tax form, and the governmental tax form may have text instructions on it, for example. So graphics are used to create the form over here, and that text can be captured and then moved over here and put on the form. To answer your other question, it doesn't matter. It's only one of several alternate ways to make a replica form. I want to clear up the chronology of the development here because I do think we are talking about 102, 103 issues, obviousness issues. It is true that the form file creation program was used by Atrix before the invention date, November 28, 1995, and that they had independent form files. But there's a piece, column one, line 55. It says the critical piece of early AFD development was the creation of an interpreter, which was a small piece of source code that could be implemented in a program in which it would automatically read, present on screen, and process an AFD file. What this means is that the host application, which is a monolithic software at the time Atrix had their payroll series, will have a file interpreter, a piece of source code written into it, and it could then get to a form file and erect a form. But the rest of the transmission of the data was in the normal way that a monolithic software would transmit data. In other words, it was by commands in the source code to go get an item of data and put it somewhere else. It was not the invention after November 28, 1995. Not the same thing. So what you see in column two, a version of the AFD runtime module. This is at line nine. A version of the AFD runtime module was created, which was a stand-alone application. That's the creation of the form viewer after 1995. And then the data file also after 1995. And what's important is the combination of elements. Any other questions? Okay. Okay, I thank both counsel for their arguments, and the case is taken under submission. All rise.